## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

TAMMY J. HOWELL,                         )
                                         )
                         Plaintiff,      )
                                         )        CIVIL ACTION
v.                                       )
                                         )        No. 16-1064-JWL
NANCY A. BERRYHILL,[1]                   )
Acting Commissioner of Social Security,  )
                                         )
                         Defendant.      )
_____  )

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security

(hereinafter Commissioner) denying Disability Insurance benefits (DIB) under sections

216(i) and 223 of the Social Security Act.  42 U.S.C. §§ 416(i) and 423 (hereinafter the

Act).  Finding no error in the Administrative Law Judge's (ALJ) decision, the court

ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C.

§ 405(g) AFFIRMING the Commissioner's final decision.

**I.     Background**

_____

[1]On Jan. 20, 2017, Nancy A. Berryhill, became Acting Commissioner of Social
Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure,
Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the
defendant.  In accordance with the last sentence of 42 U.S.C. § 405(g), no further action
is necessary.

Plaintiff applied for DIB, alleging disability beginning March 8, 2012. (R. 17, 159). Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. She argues that the ALJ erred in assessing her residual functional capacity (RFC) because he erroneously evaluated the evidence regarding her impairments (including fibromyalgia, neck pain, migraine headaches, and drowsiness) and the resulting limitations; he failed to consider Plaintiff's activities in light of her impairment of fibromyalgia and factors that tend to support her credibility, and failed to conduct his pain analysis properly; and because he erroneously discounted the medical opinions of her treating physicians, Dr. Brooks and Dr. Ferguson.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). The Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process--determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors

of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court addresses the alleged errors in the order presented in Plaintiff's Brief.

## II.     Evidence Regarding Impairments and Resulting Limitations

Plaintiff claims the ALJ relied on irrelevant evidence to discount limitations resulting from her fibromyalgia.  (Pl. Brief 4-7).  She then points to record evidence which in her view supports a finding that her allegations of limitations are consistent with fibromyalgia and are therefore credible.  Id. at 7-8.  Regarding Plaintiff's neck impairment, she concedes that Dr. Reddy read an MRI to show flattening of the thecal sac without cord impingement, but claims the ALJ erred in finding no evidence of nerve root impingement.  Id. at 9.  Next, she argues that the ALJ's findings do not contradict certain diagnoses, that the ALJ did not characterize the findings precisely as the medical sources characterized them, the ALJ's findings are not inconsistent with Plaintiff's testimony, and are not as significant as the ALJ perceived them to be.  (Pl. Br. 9-10).  She argues that the ALJ's evaluation of her neck pain merely picked and chose evidence to support his

decision without considering the evidence as a whole.  Id. at 11.  Plaintiff acknowledges that the state agency non-examining physician opined that her migraine headaches are not severe and that the ALJ also found they did not result in significant work-related limitations.  Id.  But she argues that the ALJ did not properly consider the record evidence to show migraines as a severe impairment, and in any case failed to consider her migraines in combination with her other impairments.  Id. at 12.  Finally, she claims that the ALJ did not consider Plaintiff's drowsiness "at all."  Id.

The Commissioner argues that the ALJ reasonably considered Plaintiff's impairments and the limitations resulting therefrom.  (Comm'r Br. 3).  She argues that Plaintiff does not point to additional limitations revealed by the record evidence regarding fibromyalgia or any other impairments.  Id. at 7-8.  She argues that Plaintiff's argument "asks the [c]ourt to reconsider the record evidence and reach a different conclusion" more favorable to her, "which the [c]ourt may not do under a substantial evidence review standard."  Id. at 8-9 (citing Newbold v. Colvin, 718 F.3d 1257, 1262 (10th Cir. 2013); Lax, 489 F.3d at 1084; Nguyen v. Shalala, 43 F.3d 1400, 1403 (10th Cir. 1994); Pickup v. Colvin, No. 14-5095, 606 F. App'x 430, 433-34 (10th Cir. April 6, 20-15)).

In a Reply Brief longer than her initial Brief, Plaintiff reiterated her arguments and explained how in her view the ALJ and the Commissioner misunderstood, misapplied, and mischaracterized the record evidence.  (Reply 1-11).

The problem with Plaintiff's allegations of error in evaluating the evidence regarding her impairments and the resulting limitations is that it ignores the standard for

judicial review of a Social Security decision and the rationale of the decision at issue.
Judicial review of a Social Security decision begins with the decision at issue and asks
whether that decision applied the correct legal standard and whether the record evidence
supports the findings in that decision.  The mere fact that there is evidence which might
support a contrary finding will not establish error in the ALJ's determination.  "The
possibility of drawing two inconsistent conclusions from the evidence does not prevent an
administrative agency's findings from being supported by substantial evidence.  We may
not displace the agency's choice between two fairly conflicting views, even though the
court would justifiably have made a different choice had the matter been before it de
novo."  Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also,
Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

The evidence to which Plaintiff cites in her argument that the ALJ relied upon
irrelevant evidence to discount limitations resulting from fibromyalgia is from the ALJ's
summary of the evidence in his RFC assessment.  (Pl. Br. 4, 7) (citing R. 24).  As Plaintiff
tacitly acknowledges, that evidence is relevant at least to rheumatoid arthritis (Pl. Br. 4)
("the ALJ . . . correctly discounted the role of rheumatoid arthritis in Plaintiff's
symptoms"), to which Plaintiff testified at the hearing.  (R. 46, 48).  Moreover, despite
Plaintiff's contrary protestations, the evidence cited is relevant to the central issue
discussed by the ALJ, whether Plaintiff "retains relatively good functional abilities."  (R.
24).  Plaintiff asserts that the ALJ merely selected findings to support his decision.  But,
other than her testimony and her reports to medical sources, she does not point to

evidence that she does not have relatively good functional abilities, and she points to no evidence that was ignored by the ALJ.

Plaintiff's argument that her "testimony is consistent with her fibromyalgia" (Pl. Br. 8) is correct.  But the facts that Plaintiff has fibromyalgia, an impairment which can produce the symptoms she alleges, and that there is a "loose nexus" between fibromyalgia and Plaintiff's subjective allegations of symptoms does not require that the Commissioner accept Plaintiff's allegations.  Rather, it requires that the ALJ consider all the evidence, both objective and subjective, and determine whether Plaintiff's symptoms are in fact disabling.  Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (explaining the framework presented in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987) for evaluating a claimant's allegations of symptoms).  That is precisely the framework the ALJ applied in this case, and the court will more fully address the credibility determination later.

In her argument regarding neck impairment, Plaintiff acknowledges that Dr. Reddy stated that he agreed with the findings of the MRI of Plaintiff's cervical spine which showed "flattening of the thecal sac, without cord impingement."  (Pl. Br. 9) (quoting Ex. 3F, p.1 (R. 277)).  She takes issue with the ALJ's conclusion, after summarizing the relevant treatment note, that the MRI "indicated that the claimant's spinal stenosis while impacting the thecal sac, resulted in no evidence of cord compression or nerve root impingement."  (R. 23) (citing Ex. 3F, p.1 (R. 277)) (emphasis added).

Plaintiff acknowledges that Dr. Reddy found flattening of the thecal sac but no cord impingement.  But she argues that "the ALJ incorrectly reports that Dr. Reddy stated

7

there was no evidence of <u>nerve root impingement</u>. <u>Nerve root compression</u> was reported to be shown on that MRI by Dr. Parks (C4-5, C5-6) at R.436 and by the agency reviewing physician at R. 82, 97." (Pl. Br. 9) (emphases added). Plaintiff's argument misunderstands the ALJ's conclusion and has shown no error in his evaluation of the evidence. The ALJ summarized the MRI results in Dr. Reddy's treatment note: "An MRI of the claimant's cervical spine, performed on February 24, 2011, found multilevel cervical spondylosis, most prominent at C5-6 and C6-7, resulting in central canal and neural foraminal stenosis." (R. 23). This summary is supported by the record (R. 277), and Plaintiff takes no issue with it. The ALJ then stated his finding, "This imaging indicated that the claimant's spinal stenosis while impacting the thecal sac, resulted in no evidence of cord compression or nerve root impingement." (R. 23). Plaintiff accepts the ALJ's finding that there is no evidence of cord compression, but argues that Dr. Reddy did not state there was no evidence of <u>nerve root impingement</u>. She is correct. But, neither did Dr. Reddy state there <u>was</u> evidence of <u>nerve root impingement</u>. He simply did not address the issue. That fact cannot make the ALJ's finding erroneous. The ALJ found no evidence of nerve root <u>impingement,</u> he did not find no evidence of <u>nerve compression</u>. (R. 23). Moreover, neither Dr. Parks nor the state agency physician cited by Plaintiff stated that the MRI provided evidence of nerve root <u>impingement</u>, but, as Plaintiff's Brief acknowledges, they speak of "nerve compression." (Pl. Br. 9) ("nerve root compression") <u>see also</u>, (R. 82, 97, 436) ("nerve compression"). Plaintiff has shown no error in the ALJ finding no evidence of nerve root <u>impingement</u>.

Similarly, in the remainder of her arguments regarding neck impairment, migraines, and drowsiness Plaintiff takes a hypertechnical and idiosyncratic view of the evidence and argues based upon that view, that the ALJ picked and chose evidence favorable to his decision and ignored contrary evidence.  (Pl. Br. 9-12).  As the Commissioner argues, Plaintiff's argument "asks the [c]ourt to reconsider the record evidence and reach a different conclusion" more favorable to her, "which the [c]ourt may not do under a substantial evidence review standard."  (Comm'r Br. 8-9) (citing Newbold v. Colvin, 718 F.3d 1257, 1262 (10th Cir. 2013); Lax, 489 F.3d at 1084; Nguyen v. Shalala, 43 F.3d 1400, 1403 (10th Cir. 1994); Pickup v. Colvin, No. 14-5095, 606 F. App'x 430, 433-34 (10th Cir. April 6, 20-15)); see also Energy W. Mining Co. v. Oliver, 555 F.3d 1211, 1217 (10th Cir. 2009) (On substantial evidence review, the court "will not reweigh the evidence considered by the agency, but only inquire into the existence of evidence in the record that a reasonable mind might accept as adequate to support its conclusion.").  Finally, Plaintiff's argument that the ALJ did not consider drowsiness "at all" misunderstands the decision at issue.  The ALJ stated that he had considered all of Plaintiff's symptoms in his RFC assessment.  (R. 22).  The court's general practice "is to take a lower tribunal at its word when it declares it has considered a matter."  Flaherty v. Astrue, 515 F.3d 1067, 1071 (10th Cir. 2007) (quoting Hackett, 395 F.3d at 1173). Plaintiff provides no reason to depart from the general practice in this case and has not even alleged any functional limitation caused by her drowsiness.

## III.    The Credibility Determination

Beyond the extent to which Plaintiff's earlier arguments impact the ALJ's credibility determination, Plaintiff makes two arguments which more directly call into question the credibility determination: that the ALJ failed to conduct his pain analysis properly, and he failed to consider Plaintiff's activities in light of fibromyalgia and in light of factors tending to support her credibility. (Pl. Br. 13-18).

### A.    Standard for Credibility Determination

The court's review of an ALJ's credibility determination is deferential. Credibility determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.

The framework for a proper credibility analysis is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). An ALJ must consider (1) whether the claimant has established a symptom-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's symptoms are in fact disabling. See, Thompson, 987 F.2d at 1488 (explaining the Luna framework). The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating credibility: Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating

10

and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms.  20 C.F.R. § 404.1529(c)(3)(i-vii).  The court has recognized a non-exhaustive list of factors which overlap and expand upon the factors promulgated by the Commissioner.  Luna, 834 F.2d at 165-66.  These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).

## B.    The ALJ's Credibility Findings

Once again, the starting place for review of the ALJ's credibility determination is the ALJ's decision.  The question is whether the ALJ applied the correct legal standard, and whether the record evidence supports the findings he made.  As noted above, the court's credibility review is deferential.

The ALJ stated he found Plaintiff's allegations of symptoms resulting from her impairments "not considered entirely credible for the reasons explained in this decision." (R. 23).  In the next page-and-a-half of his decision the ALJ explained the bases for finding Plaintiff not entirely credible.  Id. at 23-24.  He found the treatment records,

11

diagnostic imaging, and physical examination findings do not support Plaintiff's allegations of limitations.  As noted above he found no evidence of cord compression or nerve root impingement.  He noted electrodiagnostic testing which "found no evidence of neuropathy, plexopathy, or cervical radiculopathy.  Id. at 23 (citing Ex. 3F p.4 (R. 280)). He noted Plaintiff's neck pain was treated conservatively with physical therapy and analgesic medication.  Id. at 24 (citing Ex 26F p.8 (R. 526)).  He noted that diagnostic imaging showed only mild arthritis in her spine and mild to moderate arthritis in her right knee, "with no indication of effusion or loose bodies."  Id. (citing Ex 22F p. 5 (R. 491)). He found that the physical examinations indicated "relatively good functional abilities." Id.  He cited the results of those examinations, positive and negative, including normal muscle tone and strength, ability to tandem walk and heel and toe walk without difficulty, tenderness to palpation and reduced range of motion, and negative straight leg raising.  Id. (citing Ex. 3F pp.2-3, Ex 14F p.4, Ex. 22F pp.2-3 (R. 278-79, 435, 488-89)).  He found that Plaintiff maintained a fairly active lifestyle, reporting to a physician that "she exercises four times per week, participates in exercise classes, and goes on two-mile walks," and reporting on an Adult Function Report that she performed "a wide array of household chores and gardening tasks that represent a level of physical activity that is well in excess of what she admitted to at hearing."  Id. (citing Ex. 20F p.3 (R. 471)); see also (R. 204-13, 233-42).

### C.    Analysis

The ALJ's credibility determination is supported by the record evidence cited. Plaintiff does not really deny that fact, but argues that the ALJ relied on evidence that is irrelevant to her fibromyalgia. For example, she argues that the "largely benign physical findings" relied on by the ALJ are nonetheless consistent with fibromyalgia. (Pl. Br. 7). While Plaintiff is correct in so far as she goes, she ignores that she also reported that some of her symptoms are caused by headaches, depression, arthritis, and rheumatoid arthritis. As the ALJ found, the record evidence does not reveal disabling symptoms caused by these impairments, does not demonstrate disabling functional limitations, shows an active lifestyle despite fibromyalgia, and shows activities exceeding her testimony. It is not erroneous to rely on these facts, especially since the ALJ acknowledged and allowed for fibromyalgia.

Plaintiff argues that the ALJ erred in relying on her Adult Function Report (R. 204-13) because he did not include the limitations she also alleged in that Report. (Pl. Br. 13-14). This argument is unconvincing because although the Report included certain limitations in Plaintiff's activities, a fair reading of the Report as a whole supports the ALJ's reliance.

In her final credibility argument, Plaintiff argues that the ALJ erred because he did not consider factors favoring her credibility such as efforts to relieve pain, regular pain management, physical therapy, use of a TENS unit, exercise despite pain, muscle spasms, and her excellent work history. (Pl. Br. 17-18). However, a credibility determination does not require a formalistic factor-by-factor recitation of the evidence. So long as the

ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of <u>Kepler</u> are satisfied.  Moreover, several of the positive factors mentioned by Plaintiff were also mentioned by the ALJ, he stated the standard for evaluating credibility, he listed the regulation and rulings applicable to that determination, and he stated that he had considered "all symptoms" in his credibility determination.  (R. 22).  As noted earlier in this opinion, the court's general practice "is to take a lower tribunal at its word when it declares it has considered a matter."  <u>Flaherty</u>, 515 F.3d at 1071 (quoting <u>Hackett</u>, 395 F.3d at 1173).  Again, Plaintiff provides no reason to depart from the general practice in this case.   Giving the ALJ's credibility determination the deference it is due, the court finds no error.

**IV.    Medical Opinions**

Plaintiff argues that the ALJ erred in weighing the medical opinions of her treating primary care physicians, Dr. Brooks and Dr. Ferguson (Pl. Br. 18-22), and erroneously "failed to consider findings and opinion of Dr. Shahouri," her treating rheumatologist.  <u>Id.</u> at 22.  Specifically, she argues that the "ALJ does not explain how [Dr. Brooks's and Dr. Ferguson's] opinions fail to 'spell out the claimant's functional capacity on strict vocational terms,'" and that if their opinions were insufficient in this regard he should have required an explanation from them.  <u>Id.</u> at 19.  She acknowledges the ALJ's finding that Dr. Brooks's and Dr. Ferguson's opinions "venture somewhat into an area of consideration reserved to the Commissioner," but argues that he did not "explain 'venture somewhat,'" and that is not an acceptable reason to reject the opinions. (Pl. Br. 19-20)

14

(quoting without citation R. 25).  Plaintiff argues that the ALJ's finding that Dr. Brooks's opinion's reliance on Plaintiff's pain "is merely a restatement of the claimant's own subjective complaints, without any particular explanation of how, concretely, her pain would limit her work-related functional abilities" (R. 25) is erroneous because it "does not explain in what way Dr. Brooks was expected to be more specific."  (Pl. Br. 21).  Plaintiff acknowledges the ALJ's finding that although the treating physicians relied on Plaintiff's pain to restrict working, her "pain is not as limiting as has been alleged."  Id. (quoting without citation R. 25).  But, since the ALJ also stated that Plaintiff's pain certainly does not rise "to such a severe level as to preclude all functioning" (R. 25), Plaintiff alleges error because the treating "physicians did not assert that her impairments preclude 'all functioning,'" and that "disabled" does not mean "completely helpless."  (Pl. Br. 21).  Finally, Plaintiff argues that the ALJ ignored parts of Dr. Shahouri's treatment notes, and failed to consider Dr. Shahouri's findings of joint pain and crepitation, or to consider that Dr. Shahouri's opinions were consistent with those of Dr. Brooks and Dr. Ferguson.  Id. at 22.

The Commissioner argues that the evidence supports the ALJ's evaluation of the medical opinions.  She points to the ALJ's findings and to record evidence which supports those finding.  (Comm'r Br. 9-11).  She argues that the court should not merely interpret the evidence in a way more favorable to Plaintiff's claim.

**A.    Standard for Evaluating Medical Opinions**

A treating physician's opinion about the nature and severity of claimant's impairments should be given controlling weight by the Commissioner if it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.  Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003); 20 C.F.R. § 404.1527(c)(2).  When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician's opinion.  Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).

A treating source opinion which is not entitled to controlling weight is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527."  Watkins, 350 F.3d at 1300.  Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  Id. at 1301; 20 C.F.R. § 404.1527(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).  However, the court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any

16

subsequent reviewers the weight the adjudicator gave to the treating source's medical

opinion and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254, 1258 (10th

Cir. 2007) (quoting Watkins, 350 F.3d at 1300).

After considering the regulatory factors, the ALJ must give good reasons in his

decision for the weight he ultimately assigns the opinion.  If he rejects the opinion

completely, he must give specific, legitimate reasons for doing so.  Watkins, 350 F.3d at

1301.

### B.      The ALJ's Evaluation

The ALJ provided considerable explanation of his evaluation of Dr. Brooks's and

Dr. Ferguson's opinions:

> The undersigned has given little weight to the opinions of Lyle Brooks,
> M.D., and Heba Ferguson, M.D., the claimant's previous and current
> primary care physicians (Exhibits 11F, 30F [(R. 418, 578)]).  Dr. Ferguson
> indicates that claimant would not be able to work a full eight hours and
> probably would be limited to about four hours of work per day.  This
> restriction is not particularly explained other than by stating that the
> claimant's symptoms would prevent her from doing a full day's work.  It is
> consistent, though, with Dr. Brooks' letter indicating that the claimant could
> not work a full day (Exhibit 11F [(R. 418)]).  In that letter, Dr. Brooks
> seems to point to pain as the reason that the claimant cannot work.
>
> There are several reasons why the opinions of Dr. Brooks and Dr. Ferguson
> are not very persuasive.  In the first place, the letters do not spell out the
> claimant's functional capacity in strict vocational terms, but instead indicate
> only that the claimant could not work a full day.  Second, these assertions
> venture somewhat into an area of consideration that is reserved to the
> Commissioner and, insofar as they do that, cannot be accorded any
> particular weight (SSR 96- 5p ).  Third, the reasons for the expressed
> limitations are somewhat vague.  Dr. Brooks points to the claimant's pain,
> but this, of course, is merely a restatement of the claimant's own subjective
> complaints, without any particular explanation of how, concretely, her pain

would limit her work-related functional abilities.  As discussed above, a nerve conduction study performed on the claimant failed to find any evidence of neuropathy, plexopathy, or radiculopathy.  Examinations and x-rays have shown only mild arthritic or degenerative changes of the spine and knee (Exhibit 22F [(R. 487-93)]).  Furthermore, the claimant's alleged pain does not appear to prevent her from doing regular exercise including participating in exercise classes and walking for two miles (Exhibit 29F at 4 [(R. 549)]).  These facts do not necessarily mean that the claimant does not experience pain, but they do suggest that the claimant's pain is not as limiting as has been alleged.  It certainly does not appear that the claimant's pain rises to such a severe level as to preclude all functioning.  Nor, for that matter, is it at all the case that one must be pain-free in order to work.  Comparatively speaking, claimant's impairments are rather mild.  The undersigned does not find that they are in any way supportive of a determination that the claimant has no ability to perform any sort of work, even that which may be light or sedentary in nature.  As a result, the undersigned can afford but little weight to the opinions of Dr. Brooks and Dr. Ferguson.

(R. 25).

## C.    Analysis

The ALJ provided a fair summary of the treating physicians' single-paragraph letter opinions.  Plaintiff does not, and could not, argue otherwise.

After summarizing the opinions, and as Plaintiff acknowledges, the ALJ provided four reasons to discount the opinions.  The opinions do not provide Plaintiff's functional limitations in vocational terms.  The physicians provide opinions on issues reserved to the Commissioner.  Dr. Brooks's reliance on Plaintiff's pain is merely a restatement of Plaintiff's subjective complaints and does not explain how the pain limits her functionally.  Despite the physicians' opinions that Plaintiff cannot work, her pain is not as limiting as she has alleged.  (R. 25).

Each of Plaintiff's allegations of error does not understand the decision, is without merit, and borders on frivolous when made, as here, by a practitioner with decades of experience in Social Security disability law.  Contrary to Plaintiff's argument that the ALJ did not explain how the opinions fail to state Plaintiff's limitations in vocational terms, the ALJ specifically explained that the physicians did not provide limitations in vocational terms, see e.g., 20 C.F.R. § 404.1560 through § 404.1569a ("Vocational Considerations"), but that they opined only that Plaintiff could not work a full day.  (R. 25).  And, Plaintiff cites no authority for her suggestion that the ALJ was required to seek clarification of their opinions from the physicians.

Plaintiff's argument, that the ALJ should have explained how the physicians' opinions "venture[d] somewhat" into an area that is reserved to the Commissioner, ignores the regulation controlling evaluation of treating physicians' opinions.  The regulation provides that opinions that a claimant is "disabled" or "unable to work" are not "medical opinions" as defined in the regulations, are opinions on issues reserved to the Commissioner, and will be given no special significance in determining disability.  20 C.F.R. § 404.1527(d).  Here, Dr. Brooks opined that Plaintiff's "condition will not allow her to work a full time job" (R. 418), and Dr. Ferguson opined that Plaintiff's "symptoms prevent her from working a full 8 hour day."  (R. 578).  These constitute direct opinions that Plaintiff is disabled or unable to work and "do[] not mean that [the agency] will determine that [Plaintiff is] disabled."  20 C.F.R. § 404.1527(d)(1).  There is no error in

the ALJ's understated finding that "these assertions venture somewhat into an area of

consideration that is reserved to the Commissioner."  (R. 25).

Plaintiff's argument, that "the ALJ does not explain in what way Dr. Brooks was

expected to be more specific in explaining the toll taken by pain in limiting the extent of

Plaintiff's ability to function," is similarly unavailing.  (Pl. Br. 21).  The ALJ found that

Dr. Brooks restated Plaintiff's complaints of pain and did not explain how pain would

functionally limit Plaintiff's abilities to work.  (R. 25).  With regard to pain, Dr. Brooks

stated her opinion:  "With the amount of pain that [Plaintiff] is in it causes her to have

limited mobility with, but not limited to:  Sitting, Standing, Typing and Lifting.  Do [sic]

to these limitations this condition will not allow her to work a full time job."  (R. 418).

To be sure, Dr. Brooks relied on Plaintiff's reports of pain, and opined that her

pain would limit her mobility, and that because of this she could not work full-time.

There are at least two problems with this which were properly relied upon by the ALJ.

First, the opinion does not provide how much sitting, standing, typing or lifting Plaintiff

is able to perform, how long she is able to perform it, or how frequently she must

alternate between these activities.  See, e.g. 20 C.F.R. § 404.1567 (stating physical

exertion requirements for work).  Second, and perhaps most importantly, the opinion says

nothing about the severity of Plaintiff's pain, how the physician determined the severity

of the pain, or how that severity of pain would preclude full-time work.  See, e.g., 20

C.F.R. § 404.1529 (explaining how the agency evaluates symptoms).  As the ALJ noted,

there is no requirement that one must be pain-free in order to work.  None of this was

20

required to be explained in greater detail by the ALJ.  It is, however, relevant to the

weight assigned to the medical opinions.  And, its explanation is not improper post-hoc

rationalization on the part of this court.  It is a part of the legal standard applied in

evaluating medical opinions and assessing RFC.  The ALJ explained as much when he

stated that Dr. Brooks's statement was "a restatement of the claimant's own subjective

complaints, without any particular explanation of how, concretely, her pain would limit

her work-related functional abilities."  (R. 25).

Finally, Plaintiff takes exception to the ALJ's comment that Plaintiff's pain does

not rise "to such a severe level as to preclude all functioning," and argues error because

her "physicians did not assert that her impairments preclude all functioning."  (Pl. Br. 21).

But, the ALJ did not misapprehend the physicians' opinions, and he did not suggest that

they believed Plaintiff could not function.  Rather, he was aware that the physicians

opined that Plaintiff was disabled within the meaning of the Act (that she was unable to

perform any gainful work activity).  Consequently, as quoted above he summarized the

facts relating to the physicians' opinions as they relate to pain, and then stated his

rationale.  1. Plaintiff experiences pain from her impairments.  2. The pain is not as

limiting as alleged.  3. The pain certainly does not preclude all functioning.  4. One need

not be pain-free in order to work.  5. Plaintiff's impairments are relatively mild.

6. Plaintiff's impairments do not prevent performance of all gainful work activity

including sedentary or light work.  7. Therefore, Dr. Brooks's and Dr. Ferguson's

opinions are given little weight.  (R. 25).  Viewed in context of the ALJ's rationale,

Plaintiff has shown no error in the ALJ's statement.

Plaintiff's allegations of error in evaluating Dr. Shahouri's treatment records are

also without merit.  Plaintiff relies upon her second visit with Dr. Shahouri wherein her

rheumatoid factor was higher than the first visit to argue error in the ALJ's finding that

Plaintiff did not have any active rheumatoid arthritis or inflammation.  But, the ALJ's

decision contained a fair summary of Dr. Shahouri's treatment notes, and cited to both of

Plaintiff's visits with Dr. Shahouri, leaving no doubt that the ALJ considered all of Dr.

Shahouri's records.  (R. 24) (citing Exs. 25F at p.14 and 26F at pp.7, 8, 16; R. 517, 525,

526, 534).  Moreover, although the ALJ did not state that Plaintiff's rheumatoid factor

was higher at the second visit, he specifically cited Dr. Shahouri's report to Dr. Ferguson

after the second visit wherein Dr. Shahouri reported "[m]ild inflammatory arthritis in the

hands," and stated that she would "order hand x-rays to look for bony erosions."  (R.

526).  The report of the x-ray taken after the second visit, also cited by the ALJ, revealed

"[n]o erosions in the MCP joints, carpal bones, or radial or ulnar styloids," and noted an

"[e]ssentially unremarkable x-ray of the hands."  (R. 525).  Plaintiff has shown no error in

the ALJ's consideration and discussion of Dr. Shahouri's treatment notes.

Plaintiff's allegation that the ALJ "failed to consider findings and opinion of Dr.

Shahouri including multiple joint pain and crepitation of both knees, that Plaintiff's

fibromyalgia explained most of her symptoms, and that he described her fibromyalgia as

'Severe'" (Pl. Br. 22) (citations omitted), is equally without merit.  The ALJ recognized

and specifically discussed Plaintiff's multiple joint pain (R. 23-24), found her fibromyalgia is "severe" within the meaning of the Act (R. 19), and as discussed extensively in this decision, adequately considered and discussed her impairments including fibromyalgia.  (R. 22-25).  Although the ALJ did not specifically mention "crepitation" in the decision, Plaintiff has not shown any additional limitations resulting from that fact, and therefor the ALJ did not err in that alleged failure.

Plaintiff's arguments, in essence, do not allege that the ALJ's findings are not supported by the record evidence, but present Plaintiff's sometimes idiosyncratic view of the evidence and seek to have the court reweigh that evidence more favorably to her application for benefits.  As previously noted herein, the court may not do so.  Bowman, 511 F.3d at 1272; accord, Hackett, 395 F.3d at 1172.  Plaintiff has shown no error in the decision at issue here.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated this 8th day of March 2017, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**